UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VANESSA GUADELUPE MADRIGAL CHAVEZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:25-cv-00890-JLT-GSA

**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO GRANT DEFENDANT'S CROSS MOTION, TO AFFIRM THE DECISION OF THE COMMISSIONER AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

**(Docs. 16, 18)**

## I. Introduction

Plaintiff Vanessa Guadelupe Madrigal Chavez seeks judicial review of a final decision of Defendant Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Defendant and against Plaintiff.

## II. Factual and Procedural Background

Plaintiff filed the applications on April 22, 2022. In both applications, the claimant alleged disability beginning March 20, 2015. These claims were denied initially on July 14, 2022, and upon reconsideration on January 4, 2023. On April 25, 2024, the ALJ held a telephone hearing. On August 12, 2024, the ALJ issued an unfavorable decision. After the Appeals Council denied review on May 21, 2025, Plaintiff appealed to this Court on July 21, 2025.

**III. Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

**IV. Evaluating a Claimant's Alleged Disability**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f).

The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099.

## V. The ALJ's Decision

At step one, the ALJ found that "The claimant has not engaged in substantial gainful activity since March 20, 2015, the alleged onset date." AR 19.

At step two, the ALJ found that "The claimant has the following severe impairments: asthma, visual impairment with degenerative myopia, anxiety disorder, major depressive disorder, alcohol abuse, cannabis dependence, other stimulant abuse in remission, anemia, headache disorder, and mild obesity". AR 19–20.

At step three, the ALJ found that the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 20.

Prior to step four, the ALJ evaluated Plaintiff's RFC and concluded as follows:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; and frequent balancing, stooping, kneeling, crouching, and crawling. She should avoid concentrated exposure to pulmonary irritants such as dust and fumes. She should avoid unprotected heights and dangerous or moving machinery. She is limited to no driving. She is limited to no work that requires fine visual acuity for reading or need to look at small print. She is limited to simple, routine, repetitive jobs with no interaction with the general public and occasional interaction with supervisors and coworkers. She is limited to work that is low stress in nature, defined as no specific production rate or hourly quotas, and only occasional changes in the workplace setting. AR 23.

At step four, the ALJ found "The claimant is capable of performing past relevant work as a dressing room attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." AR 31.

At step five, in the alternative, the ALJ relied on the VE's testimony that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: Laborer, Stores; Floor Waxer; Salvage Laborer. AR 32–33.

Accordingly, the ALJ concluded Plaintiff was not disabled since the alleged onset. AR 33.

## VI. <u>Issue Presented</u>

Plaintiff sets forth two overarching arguments:

First, Plaintiff contends that the "MRFC [is] not supported by substantial evidence." Within this argument Plaintiff addresses the medical opinions of Drs. Fogel and Sulier. MSJ at 2, 12. Hereinafter, Claim 1.

Second, Plaintiff argues "The ALJ committed harmful error by failing to provide 'clear and convincing' reasons for rejecting Ms. Madrigal Chavez's symptomology testimony and evidence of record." MSJ at 15. Hereinafter, Claim 2.

### A. <u>Claim I</u> (MRFC and Drs.' Opinions)

#### 1. <u>Applicable Law</u>

##### a. <u>RFC Generally</u>

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including non-severe ones. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); SSR 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton,* 799 F.2d 1403, 1408).

**b. Medical Opinions**

For applications filed on or after March 27, 2017, new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. Id. "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without

providing an explanation supported by substantial evidence.” Woods v. Kijakazi, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to “supportability,” the new regulations provide that “[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.” 20 C.F.R. § 416.920c(c)(1). Regarding “consistency,” the regulations provide that “[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.” 20 C.F.R. § 416.920c(c)(2).

**2. Analysis**

**a. Dr. Fogel**

On November 14, 2023, Plaintiff’s therapist Dr. Fogel completed a Mental Residual Capacity Questionnaire. AR 1701. Dr. Fogel evaluated 20 mental abilities across four areas: 1- Understanding and Memory; 2- Concentration and Memory; 3- Social Interaction; and 4- Adaptation. Under each area the clinician was to check 1 of 4 boxes corresponding to a category from least severe limitation to most severe limitation: Category I – Does not preclude performance of any aspect of the job; Category II- precludes performance for 5% of an 8-hour work day; Category III- precludes performance for 10% of an 8-hour day; and IV- precludes performance for 15% of an 8-hour workday. AR 1701.

Of the 20 checkboxes, Dr. Fogel checked the boxes as follows: 1 box rated as category II; 2 boxes rated as category III, and; 17 boxes rated as category IV (the most severe limitation). The ALJ found Dr. Fogel’s opinion to be unpersuasive. AR 31.

The ALJ addressed the opinion as follows:

> The claimant’s therapist, J.M. Fogel, Ph.D., opined that performance of mental work abilities was precluded for 15% or more of the workday and that she would miss 5 days of work or more per month. (Ex. 15F). This opinion is not persuasive. It is not supported by the provider’s own treatment notes. For example, Dr. Fogel states that the claimant’s concentration is severely impaired, but mental status exams consistently

> indicate good attention and concentration. Dr. Fogel notes that she has severe anxiety around people, but the progress notes indicate that she is able to socialize to a fairly significant extent despite her anxiety, and she displays cooperative attitude. Dr. Fogel notes significant memory impairment, but there is not really any clear mention of memory issues in the therapy progress notes. Missing 5 days per month is not consistent with the level of her fairly routine treatment or efficacy of treatment. (Ex. 7F; 9F; 17F). AR 31.

The ALJ thus addressed the supportability factor as required by the regulations. Plaintiff however criticizes the ALJ's discussion insofar as it cites lengthy exhibits with no pin citations: "The ALJ's rejection of Dr. Fogel's opinion is not supported by substantial evidence, as harmfully erred by citing generally and non-specifically to three exhibits totaling 436 pages." MSJ at 3 & 4, ECF No. 16.

But as Defendant explains, "the ALJ precisely cited multiple instances from Dr. Fogel's own notes in her thorough walk-through of Plaintiff's mental health issues. See AR. 25-27." Resp. at 13, ECF No. 18. Thus, there was no need for the ALJ to cite those again after they were provided in the lengthy RFC analysis.

Next, Plaintiff asserts that the ALJ erred by "by overlooking and failing to discuss treatment records from Dr. Fogel and other psychological treatment providers, documenting significant abnormal psychological findings and symptomology, supporting Dr. Fogel's work-preclusive limitations, not discussed or linked by the ALJ to the rejection of Dr. Fogel's specific limitations." However, ALJs are not required to perform "a line-by-line exegesis," nor are they required to "draft dissertations." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

Importantly, under each area of mental functioning there was a space for the provider to provide an explanation. As to the area of mental functioning denoted as Understanding And Memory, Dr. Fogel's supporting explanation simply states, "Patient's Memory is Significantly Impaired." AR 1702. However, because this simple statement sheds no light on the reasoning behind the opinion, the opinion falls short of constituting a supportive explanation in the area of Plaintiff's mental functioning and as such it lacks persuasiveness. See. 20 C.F.R. § 416.920c(c)(1) ("[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." (emphasis added).

Regarding the factor of supportability, the ALJ explained that as to Dr. Fogel's opinion:

> It is not supported by the provider's own treatment notes. For example, Dr. Fogel states that the claimant's concentration is severely impaired, but mental status exams consistently indicate good attention and concentration. Dr. Fogel notes that she has severe anxiety around people, but the progress notes indicate that she is able to socialize to a fairly significant extent despite her anxiety, and she displays cooperative attitude. Dr. Fogel notes significant memory impairment, but there is not really any clear mention of memory issues in the therapy progress notes. Missing 5 days per month is not consistent with the level of her fairly routine treatment or efficacy of treatment. (Ex. 7F; 9F; 17F). AR 31.

Here, Dr. Fogel's opinion was inconsistent with other evidence, such as Plaintiff's treatment for mental health, which had therapeutic benefit. E.g., 1567, 1852, 1959.

Further, the opinion is already accounted for in the RFC in several self-evident respects. Under "Concentration and Memory," Dr. Fogel stated, "Patient has significant social anxiety and her concentration is significantly impaired by her condition." AR 1702. And under "Social Interaction," Dr. Fogel again explained that "Patient has severe anxiety around people which [significantly] affect her ability to interact." AR 1702. Importantly though, the RFC specifies "no interaction with the general public and occasional interaction with supervisors and coworkers." AR 23. Thus, because of these work restrictions contained in the RFC, Plaintiff's social anxiety would not significantly impede Plaintiff's concentration or social interaction in the described work environment.

Under "Adaptation," Dr. Fogel cited Plaintiff's insomnia. However, the ALJ did not identify insomnia as either a severe or non-severe impairment, which Plaintiff does not contest. The few applicable references in the ALJ's RFC analysis include: "mild sleep apnea" (AR 20); "She was using hydroxyzine as needed for insomnia. (Ex. 9F/102, 105)." "By June, she was 'doing okay'" (AR 25); and "Medication for insomnia symptoms was changed to Ambien with some noted benefit. (Ex. 17F/108, 125, 138)." (AR 26). Thus, Dr. Fogel's reference to insomnia as an impediment to adaptation is not supported by his own explanation, nor is it consistent with the record.

In sum, the ALJ did not err with respect to Dr. Fogel's opinion.

**b. <u>Dr. Sulier</u>**

Dr. Sulier performed psychological consultative examinations on June 9, 2022 (AR 902–906) and on October 21, 2022 (AR 1458–1465). The findings and opinions were similar except in respects that are not in issue here.

The ALJ addressed the opinions as follows:

> The consultative psychological examiner, Kellie R. Sullier, Psy.D., opined overall mild, mild to moderate, or moderate limitations for most work abilities except for no limitations on simple instructions or receiving instructions from supervisors. This opinion is partially persuasive. Dr. Sullier performed both consultative exams, and the opinion is supported by objective exam findings such as impaired memory and intellect which support limitations on complexity of work, but otherwise adequate judgment, fair attention, and cooperative interaction. (Ex. 5F; 8F). It is generally consistent with the record. The claimant does allege difficulty with concentrating, which tends to support limitations on pace and complexity. Headaches and fatigue contribute to this as well. She particularly notes anxiousness around others, which supports a limitation on interacting with others. She relates her psychosocial stressors, which supports a limitation on stress. However, treatment is fairly routine overall with some benefit noted, and the progress notes indicate greater functioning than alleged. For example, she has overall been able to go out to social functions with friends and family. She has not used meth at all since prior to the application date, and uses good judgment avoiding former friends who use. She presents with depressed and anxious mood and affect and soft speech, but treatment exams are mostly intact, including good attention and concentration, intact thought processes, and cooperative attitude. She notes benefit with medications at times. The objective findings and course of treatment are overall consistent with mild to moderate limitations. However, to the extent that the opinion finds moderate limitations on regular attendance or completing a workday or workweek, the level and efficacy of treatment and objective signs on examination do not support need for off task or absences from work. (Testimony; Ex. 3E: 11E; 7F; 9F; 17F). AR 30

Plaintiff emphasizes the following in Dr. Sulier's opinion:

> Dr. Sulier opined Ms. Madrigal Chavez is mildly to moderately limited with ability to understand, remember, and perform complex written and oral instructions**; mildly to moderately limited with maintaining regular attendance in the workplace;** mildly limited with ability to perform work activities on a consistent basis; moderately limited in her ability to complete a normal workday or workweek without interruptions resulting from her psychiatric condition **mildly to moderately limited with ability to interact with coworkers and with the public; and mildly to moderately limited with ability to deal with the usual stresses encountered in competitive work environment. (AR 905-910).** MSJ at 14 (emphasis in original)

Plaintiff then contends that the ALJ erred in the analysis quoted above because:

> "the ALJ 's rejection of Dr. Sulier's "mild to moderate" and "moderate" limitations on Ms. Madrigal Chavez's ability to maintain regular attendance or complet[e] a workday or workweek is not supported by substantial evidence, as it is vague and non-specific given the citations to wide swaths of records consisting of 22 pages of testimony; 25 pages of two different functional reports in "Exhibits 3E, 11E" (AR 314-325; 381-393); and as argued supra, the same three exhibits totaling 436 pages, cited generally to reject Dr. Fogel's limitations, resulting in a total of 438 non-specific pages.

MSJ at 14.

To begin, Plaintiff's argument regarding the ALJ's vague citations "to wide swaths of records" is of limited persuasiveness as there is no requirement that the limitations Plaintiff emphasizes needed to be incorporated into the RFC regardless of the claimed shortcoming in the ALJ's reasoning.

Secondly, a moderate limitation implies "[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily." *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (internal quotations omitted). Further, "[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"). *McLain v. Astrue*, 2011 WL 2174895, *6 (C.D. Cal. 2011).

Thirdly, while Plaintiff provides some contrary authority for the notion that moderate limitations, if accepted by the ALJ, must be concretely incorporated into the RFC (MSJ at 15), here the limitations Plaintiff emphasizes are almost entirely noted as mild to moderate, not simply as moderate. Thus, even if moderate limitations were required to be incorporated into the RFC, it is at best questionable to further conclude that mild to moderate limitations must likewise be incorporated into the RFC.

Finally, it is notable that the RFC does account for extensive limitations in mental functioning as follows: "She is limited to simple, routine, repetitive jobs with no interaction with the general public and occasional interaction with supervisors and coworkers. She is limited to work that is low stress in nature, defined as no specific production rate or hourly quotas, and only occasional changes in the workplace setting." AR 23. Here, Plaintiff inadequately explains just how the ALJ could have better addressed Plaintiff's mental limitations. Importantly, non-specific arguments about an alleged

insufficiency of the RFC are disfavored by the Ninth Circuit. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.") (emphasis added).

**B. Claim II (Subjective Complaints)**

**1. Applicable Law**

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281; SSR 16-3p. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. SSR 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p.

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other

symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**2. Analysis**

Here, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Because the ALJ found no malingering, the ALJ was therefore required to identify clear and convincing reasons, supported by substantial evidence for rejecting Plaintiff's symptom testimony.

To begin, the ALJ explained as follows:

> A longitudinal view of the mental status exam findings is overall not strongly adverse, and not consistent with the level of limitation alleged. The therapist observed depressed and anxious mood, sad and anxious affect, and soft speech, but attitude was cooperative, psychomotor activity was within normal limits, attention and concentration were good, thought process was intact and goal-directed, thought content was unremarkable, orientation was full, and she denied dangerous ideation or perceptual disturbances. (Ex. 9F; 17F). The primary care providers observed the claimant to be alert and oriented, cooperative, with intact cognitive function, good eye contact, good insight and judgment, full range mood and affect, and clear speech. (Ex. 9F; 11F; 17F). Other treating providers observed normal mental status findings. (Ex. 18F/42, 200, 295, 394) MSJ at 16 (emphasis added).

Plaintiff contends as follows:

> Although the ALJ "summarizes" Ms. Madrigal Chavez's psychiatric medical evidence (AR 25- 26) and "cherry picks" "normal" MSE findings, by once again non-specifically citing to large swaths of medical records in "Exhibits 9F/11F/17F," constituting 473 pages of evidence, and citations to unrelated non-psychological treatment evidence in 18F/42, 200, 295, 394, which documents ER treatment for abdominal pain (AR 2067-2069) Urgent care visit for upper respiratory virus and mild asthma (AR 2226); ER treatment for a headache and cough (AR 2320- 2324); and an ER treatment record for abdominal pain (AR 2419-2423)7 , the ALJ harmfully errs by failing to provide any discussion, much less even a summary, of Ms. Madrigal Chavez's probative testimony regarding her debilitating psychiatric symptomology and the specific evidence the ALJ believes is "inconsistent" with the specific limitations alleged. Notably, the probative testimony at issue includes her significant limitations in her ability to perform basic activities of daily living, including bathing or taking medication; isolative behavior multiple times a month where she will not leave her room and will miss significant events; the fact that she does not have custody of her daughter due to significant mental limitations; and that she does not socialize which would

> prevent a person from sustaining normal work activity 8 hours a day, five days a week. Notably, the ALJ fails to address testimony that she needs reminders to take medication and because of depression she needs reminders to shower; that she does not leave her room because of depression three to four times a month (AR 47); that her parents help with the cooking and cleaning and taking care of her daughter; that they taker her to school because she cannot drive; that they have custody of her daughter due to her mental limitations from depression; that her father pays the bills in the household; that she has never paid bills on her own (AR 48); that she has never gotten a driver's license because she cannot pass the vision test; that she can clean her desk for five minutes before needing a break of 20 minutes; that she would not be able to go to the store with a list from her parents without reminders and need to call them back (AR 49); that being around more than five people makes her depression and anxiety worse; that she does not always go to her daughter's school functions; that she needs to lay down multiple times a day due to fatigue caused by anemia and depression (AR 51); that she does not socialize with friends; that she has one friend she speaks to on the phone (AR 54). See e.g., Chynna S.v. Dudek, 5:24-cv01127-GJS, 2025 WL 1150651 (C.D. Cal. Apr 16, 2025) at *11 (An ALJ's proffered reason for rejecting a claimant's credibility is not convincing when it is based on a mischaracterization of the record or a failure to account for the portions of the record that contradict the ALJ's desired conclusion. See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ may not develop evidentiary basis of record "by not fully accounting for the context of materials or all parts of the testimony and reports"; and finding that ALJ erred by inaccurately paraphrasing record material and mischaracterizing statements and documents to reach the conclusion that the claimant exaggerated symptoms); see also Jones v. Kijakazi, 2022 WL 4285597, at *1 (9th Cir. Sept. 16, 2022) (finding the ALJ's omission of important qualifying information was a mischaracterization of the evidence); Thelan v. Astrue, 2007 WL 3283651, at *1 (9th Cir. Nov.7, 2007) (ALJ's mischaracterization of the evidence required remand of administrative decision); Normalya T. v. Kijakazi, No. 22-CV-02691-JST, 2023 WL 4109574, at *6 (N.D. Cal. June 20, 2023) (finding the ALJ erred when she "mischaracterized the evidence on which she relied and otherwise selectively cited the record to portray Plaintiff's conditions as less severe than the record actually shows them to be")

To begin, with respect to Plaintiff's contention that the ALJ indiscriminately cited large swaths of evidence contained in 400+ page exhibits with no pin citations, that is not entirely correct as the ALJ provided some pin citations at the end of the paragraph at issue: "<u>Other treating providers observed normal mental status findings. (Ex. 18F/42, 200, 295, 394)</u>" AR 26 (emphasis added). Further, citing large swaths of evidence together with a few representative samples thereof is certainly an adequate way to address an expansive medical record as ALJs need not "draft dissertations" when denying benefits. <u>Lambert v. Saul</u>, 980 F.3d 1266, 1277 (9th Cir. 2020).

Secondly, the ALJ properly relied on the medical evidence of record, namely normal mental status examination findings in discounting Plaintiff's symptom testimony. <u>Burrell v. Colvin</u>, 775 F.3d

1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Further, even though subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record, nevertheless the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

Third, Defendant correctly points out:

> Plaintiff is also simply wrong that the ALJ did not discuss or summarize her testimony. ECF No. 16 at 17-18. At pages 23-24, the ALJ expressly summarized Plaintiff's testimony, including discussing Plaintiff's mental health issues and related limitations in its own paragraph. AR. 24. The ALJ summarized Plaintiff's testimony regarding her education background, history of mental health treatment, daily activities, triggers for her anxiety and depression, and reported difficulties socializing. AR. 24 (citing "testimony").

Finally, as the ALJ noted:

> By June, she was "doing okay" and feeling a little better since last therapy session. She reported having anxiety around so many people, but a trip to Knot's Berry Farm had gone well. (Ex. 9F/80, 89). In August and September, PHQ screens with the primary care provider were negative. (Ex. 9F/39, 44). In September, she again noted some anxiety around other's, but she did okay going to family events such as an aunt's birthday, grandmother's anniversary, and was comfortable going to a cousin's house. (Ex. 9F/31, 40). In October, she noted the stressor of her ex-husband who had passed away, but was doing okay helping take care of puppies and distracting herself. (Ex. 9F/7, 17, 27). In a primary care visit, she additionally reported sertraline medication was not working, so had a medication adjustment. (Ex. 9F/11, 15). However, the following month, she was not taking the medication for depression, so was started on Prozac (fluoxetine). (Ex. 11F/10, 13). In December, hydroxyzine was changed to Trazodone for insomnia. (Ex. 11F/5, 8).
>
> In January 2023, the claimant requested an increase in Trazodone, but a PHQ screen was negative. (Ex. 13F/1, 10). She noted to the therapist doing Yoga and going to the gym despite anxiety. She was able to resist urges to call her former drug dealer. (Ex. 12F/6; 13F/6). In February 2023, she noted some depressed days but had been okay and got a new puppy Chihuahua. (Ex. 17F/221). She noted that trazodone had been beneficial for sleep, and buspirone was added to her medication regimen. (Ex. 17F/225, 228). In March, she reported anxiousness and isolation, but attended her daughter's track and field event. (Ex. 17F/194). The claimant later noted some relationship stressors and anxiety, and had an increase in Wellbutrin medication dosage. (Ex. 17F/150, 166). She stopped trazodone on her own. (Ex. 17F/174). By July noted that she went to a movie and took her daughter to get a manicure. (Ex. 17F/131). PHQ screens were negative. (Ex. 17F/135, 150). Medication for insomnia symptoms was changed to Ambien with some noted benefit. (Ex. 17F/108, 125, 138). This was in the setting of a sleep study for mild sleep apnea. (Ex. 18F/529). In August, a PHQ screen at a visit for eye pain was positive. (Ex. 17F/103). Although, a dose increase in Buspar

> was decreasing anxiety and she continued to resist the urge to use drugs, though was attending fewer family events. (Ex. 17F/121). In September, she said she slept well during the sleep study. (Ex. 17F/90). In October, she did again have difficulty around the stressor of the anniversary of her spouse passing, but it was getting easier, and she denied nightmares. (Ex. 17F/71). Ambien was changed to extended release dosage. (Ex. 17F/66). By November, she note attending a birthday party for the daughter of a friend and had a couple of drinks. Her mother's birthday went okay despite not wanting to be around people and a visit with her sister went okay. (Ex. 17F/48, 51, 54). PHQ screens were again negative at primary care visits. (Ex. 17F/40, 57, 85). In January 2024, she noted some anxiety at family parties and was drinking more around the holiday stressors. (Ex. 17F/14). However, in February 2024, she did note that she was trying not to drink even while her friends wanted her to go out and drink. (Ex. 17F/9). Her medications were continued, while another PHQ screen was negative. (Ex. 17F/2-3). AR 25 (emphasis added).

In addition, the ALJ properly relied on evidence demonstrating Plaintiff's more extensive and varied activities. See Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated."). For example, as Defendant explains:

> Plaintiff alleged she had significant limitations in her daily activities, including rarely socializing outside her home and then only to occasionally visit a cousin. AR. 53-54. Yet, the ALJ documented Plaintiff engaging in multiple social activities outside the home. She took her daughter to an amusement park. AR. 1545. She went to her aunt's birthday. AR. 1496. She went to a family outing for her grandmother's anniversary. AR. 1505. She took care of puppies. AR. 1472, 1749. She went to the gym. AR. 1681. She went to her daughter's track and field event. AR. 1928. She went to see a movie and took her daughter to get a manicure. AR. 1865. She went to a friend's birthday party and had a few drinks. AR. 1788 (attended quinceañera). She went to family parties. E.g., AR. 1782, 1900 ("[s]he will drive back [from LA]" after attending her niece's birthday party). She also wanted to take her daughter (who is deaf) to Universal Studios in Orlando, Florida but was worried about losing track of her. AR. 1782. She reported some of these activities increased her anxiety, but she was able to do them regardless, and her physical impairments, including vision loss, did not prevent these activities. She also acknowledged she had a friend that she talked to on the phone, and although she testified she had only one friend, records discuss multiple friends. AR. 54, 1748
>
> Resp at 7&8, ECF No 18

In sum, as to Plaintiff' second claim, because the ALJ provided multiple valid reasons for discounting Plaintiff's subjective complaints, the ALJ's finding is supported by substantial evidence.

## VII. Findings and Recommendation

For the reasons stated above, substantial evidence and applicable law do support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, be **DENIED**
2. Defendant's Cross Motion, ECF No. 18, be **GRANTED**
3. That the Commissioner of Social Security's Decision be **AFFIRMED**.
4. That the Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

## VIII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **September 25, 2026**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE